## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

CLAY AND ALS. v. WALTER & CO. AND ALS.

May 1, 1884.

1. ANTE-NUPTIAL SETTLEMENTS—*Fraud.*—Whatever the design of the grantor, a settlement on a woman in contemplation and in consideration of marriage, is valid; unless her knowledge of his intended fraud is clearly and satisfactorily proved. *Herring and als.* v. *Wickham and Wife and als.,* 29 Gratt. 628.

2. IDEM—*Idem—Notice—Proof.*—Service by creditors of grantor, of written notice in accordance with Code 1873, ch. 163, § 1, on the grantee before the marriage, of his fraudulent design in making the settlement, cannot affect her constructively with notice of such design; but her actual knowledge of and participation in that fraudulent design must be clearly established by proof.

Apeal from decree of circuit court of Halifax county rendered 10th November, 1882, in the suit of R. Walter & Co. and others, complainants, against James D. Clay and Mary F. (formerly Cardwell), his wife, and G. T. Cardwell, trustee. On 5th March, 1881, in contemplation of marriage between said James and said Mary, and in consideration thereof, said James conveyed to said Cardwell, trustee, certain real and personal estate in said county, to hold from the date of said marriage, the same in trust for the separate use of said Mary during his and her joint lives, and at his death, she surviving, to her in fee simple; but if he survive her, then to such person as she may appoint, and in default of such appointment, to the issue of the marriage, if any, and if none, then to her heirs and dis-

tributees. On the same day, after the execution and acknowledgement of said deed by all three of the parties thereto, a writing was served on her by the delivery to her ,of a copy thereof by the deputy sheriff, intending to be a notice to her from the creditors of James D. Clay, that the latter designed by such settlement on her, to hinder, delay and defraud his said creditors ; but the sheriff did nqt explain the writing and she did not have knowledge of its contents or purpose, until after the marriage, which was solemnized on the 8th March, 1881. Then, on 16th March, 1881, she conveyed what she supposed to be enough of said property to pay the unsecured debts of her husband. On 18th March, 1881, the complainants filed their bill assailing said deed of settlement as having been made by the grantor with intent to hinder, delay and defraud his creditors, and averring that the beneficiary had knowledge of such intent before the said marriage, and asking to have it annulled as to them. The trustee and the *cestui que trust* answered, denying all knowledge of any fraudulent design on the part of the grantor. The depositions of the deputy sheriff and others were taken by the complainants. At the hearing, the circuit court adjudged that the deed of settlement was fraudulent and void. From the decree the defendants Mary F. Clay and G. T. Cardwell obtained an appeal to this court.

*W. W. Henry, S. C. Perrow,* for the appellants.

*Carrington & Fitzhugh, N. T. Green, H. Edmunds, Riely & L. Watkins,* for the appellees.

LACY, J., delivered the opinion of the court:

The record shows that on the 18th of March, 1881, the appellees filed their bill against the appellants, asking the said court to set aside in favor of them, as creditors of James D. Clay, the husband of the appellant, Mary F. Clay, a certain deed of settle-

ment made on the said Mary F. Clay, in consideration of the marriage afterwards had and solemnized between the said James D. Clay and Mary F. This deed was executed on the 4th day of March, 1881, and recorded on the 8th of March following, the day on which the marriage took place. The deed sets forth on its face that it is in consideration of marriage, and the marriage was afterwards consummated between the parties.

The appellant, Giles T. Cardwell, the brother of the intended wife, was made trustee in the deed, and signed the same, as did also Mary F. Cardwell, now Mrs. Clay. The deed settled the bulk of the property of the said James D. Clay on the said Mary F., and the said James D. Clay was at the time largely indebted.

The said appellees claimed that the deed was made for the purpose of defrauding them of their debts, and charged the fraudulent intent not only on the said grantor, but also on the grantee therein. They charge that the grantee had knowledge of the fraud of the grantor, and participated therein; that before she signed the deed of marriage settlement, they caused a written notice to be left with her by an officer, in which was set forth the property owned by the said grantor, the debts due by him, and their belief that his intention was fraudulent, and their purpose, if she accepted the said settlement, to attack the same and set it aside as fraudulent; that this notice was served before the execution of the deed and before the marriage had taken place; that this was on the 5th of March, 1881, and the marriage took place on the 8th day of the same month.

The appellant, Mary F. Clay, the wife, answered the bill, as did the trustee, Giles T. Cardwell, subsequently. Mrs. Clay says in her answer that she had no knowledge of the fraudulent intent of her husband, if any such existed, and no knowledge that any such charge was made until after her marriage; that she was told by her intended husband that he intended to make a settlement upon her by deed, which she would be expected to sign and acknowledge, and that to that end one G. R. C. Phillips,

a notary public, would bring over the deed on the morning of the 5th of March, and that he would take her acknowledgment to the same when she had signed it; that, in pursuance of this understanding between them, on the said 5th of March, the said notary attended upon her and exhibited the deed, which she signed, and to which he then appended a brief writing, and then said to her that he had a paper for her, handed her a paper similar in form and appearance to the deed which she had just signed and acknowledged, and which he had returned to his pocket, and then said hand that back to me, that is not the copy for you, took that back and gave her another, saying that was her copy, or that each of the parties would have to have a copy, or some such words, and then left, carrying off the deed; that he did not tell her the contents of the paper at all, and she supposed it to be a copy of the deed she had just signed and acknowledged; and that company coming in she put it away in her trunk and did not read it; that a female friend asked her to show it to her, and she replied she had not read it herself; and the next morning a male friend called at the house, who was her relative, and asked for this paper, and she got it and gave it to him, and he carried it away with him, and she did not see it again until after her marriage, and was wholly ignorant of its contents until after the marriage ; that resting under the undisturbed belief that it was a copy of the deed she did not read it ; that after the marriage, hearing that her husband was indebted, and of the complaints of his creditors, she voluntarily conveyed, as she was authorized by the deed of marriage settlement to do at her pleasure, a large part of the property of her husband to a trustee, to be subjected to the payment of his debts, enough to have paid those which were otherwise unsecured, if it had been properly applied; that the same had been forced to sale under circumstances to cause a sacrifice thereof, and yet had sold for enough to well nigh satisfy them.

The said Giles T. Cardwell, trustee, in his answer also denies all knowledge of any fraudulent purpose on the part of the said

grantor. And during the progress of the suit a child having been born, issue of the said marriage, his answer by guardian *ad litem* is also filed. The deposition of the notary who took Mrs. Clay's acknowledgment to the said deed, was taken in the cause by the complainant in the court below, and he testifies that he took the acknowledgment of Mrs. Clay, then Miss Mary F. Cardwell, before he handed her the paper in question, but he does not state, nor is he asked, if he, in any manner, acquainted her with the contents of the said paper. As to her knowledge of the contents of the said paper, no other testimony is taken in the cause.

On the hearing in the circuit court, the court held that Mrs. Clay had knowledge of an intended fraud perpetrated by her husband, and set aside the deed aforesaid as null and void, decreeing the money which had been realized under sales under her deed of the 16th of March, 1881, mentioned above, to the plaintiffs just as they were about filing their bill to subject the property. This fund was in the hands of the court in part; also funds from sales made under order of the court by a receiver, which was not realized under her deed of March 16th, 1881.

After the late case of *Herring* v. *Wickham*, in this court, 29 Gratt. 628, it may be said, as was contended in argument here in this case by the learned counsel for the appellant, that it is now beyond dispute, that whatever was the design of her husband, the settlement upon his wife in contemplation of marriage and with marriage as the expressed consideration, is valid, as such settlement is upon valuable consideration, unless a knowledge of the intended fraud is proved by clear and satisfactory evidence.

It is not necessary for us to review or to elaborate that question farther than to refer to that case and the authorities therein cited and reviewed in the opinion of Judge Staples. Nothing can be added to that elaborate and complete discussion of that subject.

Does the record show that the intended wife had knowledge

of and participated in the intended fraud, if any such existed? This knowledge cannot be presumed; there is no reason to believe that an intended husband would confess his guilt, if any, to his intended wife on the eve of their marriage. It is not pretended that any knowledge was brought to Mrs. Clay of this intended fraud, except such constructive notice and knowledge as she may be held to have had from a service of this paper writing left with her.

It is contended, on the part of the appellees, that under section 1, chapter 163 of the Code of 1873, the notice in question is conclusive as to knowledge. The statute provides that "a notice, no particular mode of serving which is prescribed, may be served by delivering a copy thereof in writing to the party in person," &c. That chapter of the Code is the first chapter under title fifty-one entitled proceedings in civil cases, and the chapter is concerning notices and motions in prescribed cases, and in any civil proceeding wherein a notice is required and prescribed, in order to any civil proceeding the statute provides as we have seen above. Can that in anywise apply to a case like this, or is it wholly inapplicable? No such notice as this is prescribed in any civil proceeding. What it is necessary to show here is, that the intended wife knew of the guilty purposes of her intended husband, if such existed, and that she participated in the fraudulent intent. Is it not necessary then to bring home to her actual knowledge of the fraud in contemplation? It might turn out that a written notice might be served upon the intended wife, as it did turn out in this case, under such circumstances as might inform her of nothing whatever, and not put her upon inquiry even, and she might have a written notice of the charges against her intended husband in her possession and yet have no knowledge whatever of them. Her answer is responsive to the bill and is sworn to, and is uncontradicted. Upon well established principles it must be taken as true. Then although, she had this written notice in her possession, she actually was, so far as the proofs in this case show

to the contrary, in ignorance of any purpose of her husband to defraud his creditors, and, indeed, ignorant of the fact even that they, the creditors, thought so, for, as has been ingeniously argued in this case, the two things may after all be distinct, and she might know that the creditors of her husband objected to a settlement upon her, as in contravention of their rights, and yet not know and not believe that her intended husband had given any just ground for such suspicion or charge. If, according to the authorities on the subject, she had knowledge of the fraud and participated therein, that is, colluded with the other party in the plan to cheat, concerted with him to secure the property to themselves and to defraud the creditors, then the settlement would be void.

But, on the other hand, if a man wishing to enter into matrimony with a particular woman, should, being insolvent, convey to her all his property, which was accepted by her with full knowledge of the facts, the mutual intent being not to defraud his creditors as a primary object, but to contract marriage, each on such terms as could reasonably be procured from the other, the case would not be within the statute of frauds. Nor, as Mr. Bishop quaintly observes, would it be in violation of any principle of the common law, because the common law, though it abhors every sort of cheating, loves matrimony—its principles all point towards it whenever the circumstances of a case expose them to this attractive force.

It is not so extreme and unreasonable a proposition under the circumstances of this case as to be beyond belief that Mrs. Clay, then a young lady about to be married, should not have deemed it necessary to read the paper in question. If it was a copy of the deed, why should she read it? she had, doubtless, read the deed, or confiding in the man to whom she was about to give her hand in marriage, and to whom she had willingly consented to confide her future, she was confident of its contents. It rather tends to show that marriage was her object rather than the contemplated settlement.

Opinion—Decree

It may be remarked, that if she did have any knowledge of any fraud on the part of the grantor, it is not shown in the proofs in this case, and cannot be presumed. If she did have complete knowledge of her husband's property, as is contended, a perusal of the notice would not have been proof of an intended fraud, for if she knew of the contents of the deed, the notice would have disclosed to her the fact that a large tract of land owned by her husband, of three hundred and ninety-four acres, was not included in the deed of settlement.

Her subsequent conduct goes far to rebut any charge of fraud against her, for it appears that shortly after the marriage and before any suit was brought against her, she conveyed property which she believed sufficient to pay the unsecured debts of her husband to a trustee, to secure the payment of these debts.

We are of opinion that the fraudulent intent of the intended wife is not established by the evidence in the record, and that the circuit court erred in its said decree in so holding and in setting aside the said deed of marriage settlement, and the same must be reversed and annulled.

The decree was as follows:

This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid, and the argument of counsel is of opinion, for reasons stated in writing and filed with the record, that the circuit court of Halifax county erred in its decree of the 10th day of November, 1882, appealed from, and that the same is wholly erroneous. It is therefore decreed and ordered that the said decree of the said circuit court of Halifax county, of the 10th day of November, 1882, be reversed and annulled, and that the appellees do pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here. And this court now proceeding to enter such decree as the said circuit court ought to have rendered, it is decreed and

ordered that the bill of the plaintiffs be dismissed, and that the money in the hands of the court, or under its control, which was realized under the sales made under the deed of Mary F. Clay, of the 16th of March, 1881, to J. M. Carrington, trustee, be paid to the order of the said J. M. Carrington, trustee, to be by him applied to the purposes of the trusts in the said deed; and that the said J. M. Carrington, trustee, do proceed to fully execute the said trust deed of the 16th of March, 1881, and settle his accounts as trustee, and pay over the moneys in his hands to the parties entitled under the provisions of said deed.

And the court doth further decree and order that such money as may be in the hands of the court, or under its control, realized otherwise than under the deed of the 16th of March, 1881, aforesaid, from sales made by order of the court, be paid to Mary F. Clay, or as she may order; and that the appellees do pay to the appellants their costs by them in their defence expended in the said circuit court.

Which is ordered to be certified to the said circuit court of Halifax county.

FAUNTLEROY, J., dissented.

DECREE REVERSED.